UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-489-H

WILSON & MUIR BANK & TRUST CO.                                           PLAINTIFF

V.

TRAVELERS CASUALTY & SURETY                                              DEFENDANT
COMPANY OF AMERICA

**MEMORANDUM OPINION AND ORDER**

In this declaratory judgment action, Plaintiff, Wilson & Muir Bank & Trust Co. ("the Bank"), seeks a declaration that it is not liable for damages sustained by Defendant, Travelers Casualty & Surety Company of America ("Travelers"), as a result of significant embezzlement by an employee of Travelers' insured, MTD Holdings, Inc. ("MTD"). Travelers counterclaims that the Bank is liable for approximately $2,000,000.00 worth of damages because of its failure to exercise reasonable care is cashing checks for the MTD employee. At this time, the Bank moves for summary judgment, largely based on the theory that Travelers' claims are time barred.

**I.**

MTD is a large manufacturing company with its corporate headquarters in Ohio. The company has a plant in Leitchfield, Kentucky, which employs primarily blue collar workers responsible for manufacturing parts for various appliances. Kimberly Stallings ("Stallings") was hired as the controller for the Leitchfield plant in 1995 and became a cost account on December 15, 2003. Stallings continued her employment with MTD until June 7, 2007, when it was discovered that she had embezzled approximately $2,384,885.00 over a ten year period.

During her employment with MTD, Stallings was given what appears to be total control of the Leitchfield plant's petty cash account, which was maintained by the Bank. MTD guidelines provide that petty cash accounts are not to contain more than $25,000.00 at any given time and checks should not be written on these accounts. These policies were not followed by the company. Specifically, MTD informed the Bank that Stallings was a designated signatory on checks written on the company's accounts and provided the Bank with corporate resolutions stating that the Bank

> is hereby authorized to pay and charge to the account of this corporation any checks, drafts or other withdrawal orders, so signed, including those payable to the individual order of the person signing the same and including also checks or other withdrawal orders payable to the said Bank or to any other person or corporation, which are applied in payment of any indebtedness owing to said Bank from the person or persons who signed such checks or other withdrawal orders.

The Bank was never informed that checks should not be written on the petty cash account. Over a ten year period, Stallings embezzled funds by cashing large checks made payable to cash or the Bank. Stallings also deposited checks made payable to her in her personal account held with the Bank. It is clear that Stallings cashed checks on a very regular basis, up to 20 or more times a month.

During the relevant time period, the Bank and MTD operated under an account agreement that included the following provision:[1]

> **STATEMENTS:** If you do not notify us of an unauthorized signature or alteration within a reasonable time (not to exceed 14 days) after we send or make available to you your statement and items: (1) you cannot assert the unauthorized signature or alteration against us, even if we are unable to show a loss due to your failure, and (2) you cannot assert any unauthorized signatures or alteration by the same wrongdoer

---

[1] In 2001, a new account agreement was put in place, but the substance of this provision remained the same.

> on items paid by us after the reasonable time mentioned above elapses, but before we receive your notice. We lose these protections if we fail to exercise reasonable care in paying an item with an unauthorized signature or alteration, unless you do not notify us of the problem within 60 days of when we send or make available to you the statement and items. You must report any other problem (e.g. erroneous statement or passbook entry, missing signature, unauthorized endorsement, etc.) within this 60-day period or lose your right to assert the problem against us.

It is undisputed that the Bank sent MTD appropriate monthly statements during the entire period. It is further undisputed that had MTD simply reviewed these statements, it would have discovered Stallings' embezzlement.[2] Unfortunately, MTD allowed Stallings to have total control over the account, including control over the statements. Thus, no one from MTD, other than Stallings, reviewed the statements until June 7, 2007, and no one reported any problems to the Bank until that date.

Once the embezzlement was discovered, MTD contacted its insurance company, Travelers, and filed a claim. Travelers reviewed the claim and paid its policy limits, $2,000,000.00. As a result of that payment, all of MTD's rights against the Bank were assigned to Travelers. In this action, Travelers seeks subrogation from the Bank for its loss.

## II.

The Bank contends that the vast majority of the checks cashed by Stallings for which Travelers seeks reimbursement are precluded by the 60 day period of repose provided by the account agreements.[3] The Kentucky Supreme Court has ruled that such contractual limitations

---

[2] It is also agreed that the Bank contacted MTD's corporate treasurer in December of 2003 and informed him that Stallings was frequently in the Bank and cashed a considerable number of checks for large amounts. The treasurer admits that the Bank sent a list of specific items of concern and that he contacted the Leitchfield plant about that list. Upon conducting this "investigation," the treasurer informed the Bank, "we think we're satisfied that we're okay."

[3] The Bank asserts, and Travelers does not dispute, that it provided MTD with a statement on March 30, 2007. MTD did not report any problems until June 7, 2007. Thus, all checks included on the March 30th and earlier statements were outside of the 60 day period of repose. Those checks totaled $2,163,482.92. Stallings presented

on the period of repose are enforceable "unless [the limitation] is manifestly unreasonable." *Concrete Materials Corp. v. Bank of Danville & Trust Co.*, 938 S.W.2d 254, 259 (1997) ("The failure of the customer to adhere to the terms of the account agreement is a defense that may be raised to counter the claims of breach of contract, negligence and conversion by [the plaintiffs].").[4] The limitation in this case is 60 days, the same as the period endorsed by the court in *Concrete Materials*. Thus, the Court finds that the limiting provision in the account agreement is reasonable and acts as "a condition precedent to suit and recovery." *Id.* at 257. Because of the broad scope of the limitation, it appears to bar recovery for any checks, regardless of the payee, included on statements sent to MTD more than 60 days before MTD notified the Bank of any problems.

In arguing against the 60 day limitation provision, Travelers relies heavily on *Bullitt County Bank v. Publishers Printing Co., Inc.*, 684 S.W.2d 289 (Ky. Ct. App. 1984). That case stands for the broad proposition that banks have a duty to exercise ordinary care in handling the checks of their customers, especially when those checks are made payable to the bank. However, the Kentucky Court of Appeals engaged in no discussion of the applicability of a contractual period of repose. In fact, more recently *Concrete Materials* distinguished *Bullitt* on

---

approximately $221,402.87 worth of checks within the 60 day period.

[4] In *Concrete Materials*, the court stated that genuine issues of material fact precluded summary judgment for the bank. However, the court did not annunciate what those disputed facts were and this Court cannot determine what would have precluded judgment. The language of the court's opinion suggests that where facts are not disputed, the contractual limitations period applies and can be the basis of summary judgment for the bank. Specifically, the court held, ""The account agreement makes examination of bank statements in a timely fashion for any unauthorized withdrawals or alterations a condition precedent to suit and recovery." *Id.* at 257. The Court further found that "the failure of Concrete Materials to notify it of any discrepancy within 60 days of receipt of the statement as required by the account agreement, bars recovery for claims within one year not otherwise barred by the statute." *Id.* at 259. There are no disputed facts in this case related to the contents of the account agreements or the time when the statements were provided to MTD.

4

this exact basis. *See Concrete Materials*, 938 S.W.2d at 258 ("In particular, we will note that *Bullitt County Bank v. Publishers Printing*, Ky. App., 684 S.W.2d 289 (1984), is inapplicable and distinguishable. That case did not involve . . . an account agreement."). This Court agrees that *Bullitt* is inapplicable here. The broader policy behind enforcing contractual periods of repose overcomes any duty established by the *Bullitt* case.[5]

Travelers next argues that the Bank acted in bad faith in cashing the checks made payable to Stallings and that such bad faith precludes the Bank from asserting the 60 day contractual limitation period. Kentucky courts have not directly addressed this issue and there appears to be some disagreement among other jurisdictions. *Compare Falk v. The Northern Trust Co.*, 763 N.E.2d 380 (Ill. Ct. App. 2001), *with Pinigis v. Regions Bank*, 977 So.2d 446 (Ala. 2007). This Court favors the apparent majority position that good faith is not a condition precedent to enforcement of the repose period. Even if bad faith could preclude assertion of the 60 day period, there is nothing to support such a finding.

Travelers argues that bad faith is implied because a large number of the checks the Bank cashed were signed by and made payable to Stallings. In Kentucky, however, negligence is not considered in determining whether the Bank acted in "bad faith." *See Star Bank, Kenton County, Inc. v. Parnell*, 992 S.W.2d 189, 193 (Ky. Ct. App. 1998). Rather, only whether the Bank acted honestly matters. *Id.* Here, there is no evidence of dishonesty. The resolutions MTD passed and provided to the Bank unequivocally authorized the Bank to accept any check drawn on

---

[5] To the extent Travelers claims that the contractual period cannot apply here because *Bullitt* creates a common law duty, not a duty governed by the UCC, the Court finds that argument unpersuasive. First, the *Bullitt* court did not consider whether the UCC provided a remedy for checks made payable to the bank. Moreover, even if the checks made payable to the bank were covered by common law duties rather than the UCC, *Concrete Materials* indicates that the contractual period of limitation would still apply. *See Concrete Materials*, 938 S.W.2d at 258.

5

MTD's accounts, specifically including checks made payable to the signor. Thus, the Bank was expressly authorized to cash checks payable to Stallings. Moreover, MTD concedes that the Bank called to notify it of significant check cashing by Stallings. After taking time to investigate, MTD informed the Bank that everything was acceptable. As a matter of law, such actions on the part of the Bank do not amount to bad faith.

Finally, Travelers argues that KRS § 355.3-307 applies and creates a new cause of action not subject to the 60 day contractual limitation period. That statute applies to checks cashed in violation of fiduciary duties. Even assuming that Travelers is correct about KRS § 355.3-307, there is no evidence the Bank violated the statute. Specifically, KRS § 355.3-307(b)(3) provides, "If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty." The official comments to the statute provide more detail. In discussing the requirement of "knowledge" as applied to other portions of the statute, the official comment to § 355.3-307 states, "Mere notice of these facts is not enough to put the taker on notice of the breach of fiduciary duty and does not give rise to any duty of investigation by the taker." More specific to the exact provision in this case, the comments offer the following example:

> For example, Doe as President of Corporation writes a check on Corporation's account to the order of Doe personally. The check is then indorsed over to the Bank . . . . In this case there is no notice of breach of fiduciary duty because there is nothing unusual about the transaction. Corporation may have owed Doe money for salary, reimbursement for expenses incurred for the benefit of Corporation, or for any other reason. If Doe is authorized to write checks on behalf of Corporation to pay debts of Corporation, the check is a normal way of paying a debt owed to Doe. Bank may assume that Doe may use the instrument for his personal benefit.

Travelers has presented no evidence that the Bank had actual knowledge of a breach of fiduciary

duties. Rather, they simply argue that the large number of checks deposited into Stallings' account mean that the Bank should have known Stallings was breaching her fiduciary duties. Even if the sheer number and size of the checks created a duty to investigate, a duty rejected in the official commentary, the Bank did so. As discussed, the Bank had specific authorization on file to cash these checks and attempted to alert MTD of the problems. Given the response of MTD that everything was acceptable, the Bank certainly did not have knowledge of any fiduciary breach.

## III.

Having determined that the 60 day contractual period of repose is enforceable and applies to the facts of this case, only claims for checks cashed or deposited by Stallings not listed on statements issued on or before March 30, 2007, remain.[6] The Bank has moved for summary judgment on these claims based on MTD's negligence. This matter was discussed at the Court's regularly scheduled pretrial conference and the parties appeared to agree that the issue of MTD's negligence was more properly an issue of comparative fault for the jury and not an issue subject to summary judgment. In light of that discussion, the Court does not grant summary judgment on these claims, but leaves open the possibility of subsequent motions on the issue of the Bank's liability, especially in light of the apparent authority doctrine.[7]

---

[6] The Bank argues that because Travelers only paid $2,000,000.00 to MTD and the amount of the checks excluded by the limitation provision is greater that $2,000,000.00, Travelers is not entitled to any recovery. However, the Bank cannot choose the checks for which Travelers seeks reimbursement. Rather, Travelers is within its rights to seek subrogation on the checks not excluded by the 60 day period.

[7] Kentucky law provides that "if a drawer cloaks his agent in apparent authority to receive the proceeds of checks made payable to the bank's order, the drawer acts at its own risk. Thus, if [the account holder] manifested to the bank that [the agent] had the power to cash checks such as those involved, the bank could not be held liable for paying the proceeds of the checks to the agent." *Bullitt Bank*, 684 S.W.2d at 292-93 (citation omitted). Here, MTD's corporate resolutions provide little doubt that it manifested its intent that Stallings be allowed to cash the checks she did. The parties have not fully briefed this issue and the Court has not fully considered it, but as a matter

7

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Bank's Motion for Summary Judgment is SUSTAINED IN PART. All claims for checks cashed or deposited by Stallings that were included on statements sent to MTD on or before March 30, 2007, are DISMISSED WITH PREJUDICE.

This is not a final and appealable order.

cc: Counsel of Record

---

of impression, it appears the Bank may have a strong argument on this basis. However, the Kentucky Supreme Court has also noted that "agency continues to be a question of fact to be determined from the circumstances and the conduct of the parties. Summary judgment on such a question is improper because it is a material question of fact as to whether any agency existed." *Concrete Materials*, 938 S.W.2d at 259-60.